UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

| | |
|---|---|
| JESUS VASQUEZ, JR., <br> PENNEY LEIGH VASQUEZ, | CASE NO.: 19-01841-5-SWH <br> CHAPTER 7 |
| DEBTOR(S) | |

| | |
|---|---|
| JESUS VASQUEZ, JR., <br> PENNEY LEIGH VASQUEZ, <br><br> Plaintiffs, <br><br> vs. <br><br> JPMORGAN CHASE BANK, N.A., <br><br> Defendant. | ADVERSARY PROCEEDING NO.: <br> 19-00100-5-SWH |

**RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS COMPLAINT**

NOW COME the Plaintiffs, by and through the undersigned counsel, in the above entitled adversary proceeding and responding to the Defendant's Motion to Dismiss Adversary Complaint [D.E. 6], show unto the Court:

## BACKGROUND

The Plaintiffs filed a petition under Chapter 7 of the Bankruptcy Code commencing this case on April 22, 2019 ("Petition Date"). The Debtors received their Chapter 7 discharge on August 7, 2019.

On the Petition Date, the Debtors held an ownership interest as tenants by the entireties in real property located at 404 Swann Point Avenue, Rocky Point, NC

28457, and more particularly described in the Warranty Deed filed in the Pender County Registry at Book 4295, Page 78, on July 25, 2013 (hereinafter "Real Property").

The Debtors acquired the Real Property in 2013 for a purchase price of $268,000.00 with the help a U.S. Department of Veterans Affairs guaranteed mortgage. Mr. Vasquez faithfully served his country for over a decade in the U.S. Marine Corps from March 20, 2001 through medically retiring on February 28, 2012. Mr. Vasquez served as part of Operation Iraqi Freedom and received numerous commendations, letters of appreciation, and medals during his service. The Department of Veterans Affairs rates Mr. Vasquez as 100% disabled for his service-connected disabilities, he additionally receives Combat Related Special Compensation (CRSC) and Social Security Disability Benefits. Mrs. Vasquez is the caregiver for her husband and their four minor daughters; she is compensated by the Department of Veterans Affairs as part of the Caregiver Stipend Program.

On the Petition Date, the fair market value of the Real Property was $219,705.00 as set forth in the Debtors' Chapter 7 Schedules. The home currently needs repairs to the roof and attic, along with mold remediation as a result of damage from Hurricane Florence. Based upon comparable sales, necessary repairs and maintenance, along with the Pender County tax valuation of $219,705, the Debtors' believe the Real Property is worth no more than $220,000.

On the Petition Date, there existed certain liens and encumbrances against the Real Property with the following priority, and upon information and belief, in the amounts as follows:

a. Deed of Trust recorded in the Pender County Registry on July 25, 2013, at Book 4295, Page 80, which purports to grant a lien in favor of JP Morgan Chase Bank, N.A. ("Chase") against the Real Property (said deed of trust is hereinafter referred to as "1st Deed of Trust"). The Petition Date balance owed against the 1st Deed of Trust was $ 240,464.48 as set forth in the Debtors' Schedule D. This deed of trust was subsequently modified in December 2018 as a result of Hurricane Florence to defer several payments that came due after the Hurricane and to extend the maturity date of the mortgage to December 2043.

b. Deed of Trust recorded in the Pender County Registry on April 23, 2015, at Book 4569, Page 118, which purports to grant a lien in favor of the North Carolina Housing Finance Agency against the Real Property ("2nd Deed of Trust"). The Petition Date balance owed against the 2nd Deed of Trust was $34,000.00 as set forth in the Debtors' Schedule D.

The Debtors filed this Adversary Proceeding to that they can strip down the mortgage of Chase to the amount of its "allowed secured claim" under Section 506(a)

3

of the Bankruptcy Code; a process that is specifically allowed by Section 506(d) of the Code.

## ISSUE PRESENTED

The singular issue of this case is whether the U.S. Supreme Court's holding in Dewsnup v. Timm, 502 U.S. 410 (1992) should be overruled.

## ARGUMENT

### I.   Dewsnup v. Timm is erroneous and should be overruled[1]

Prior to the holding in Dewsnup, a majority of the federal courts interpreted Section 506(d) to allow the strip down of unsecured liens. See, Margaret Howard, Stripping Down Liens: Section 506(d) and the Theory of Bankruptcy, 65 Am. Bankr. L. J. 373, 374, n. 2 (1991). See also, Gaglia v. First Federal Sav. & Loan Ass'n, 889 F.2d 1304, 1306 (3rd Cir. 1990) ("The majority of the bankruptcy and district courts that have considered this issue agree that the language of Sec. 506 allows a Chapter 7 debtor to void liens secured by property that is not administered.") (citation omitted).

The reasoning adopted by the Court in Dewsnup was not advanced by either party to the avoidance action. Rather, the Solicitor General advanced a "novel" argument that was adopted by the lender at oral argument. See, Ronald J. Mann,

---

[1] Plaintiffs fully recognize and understand that only the United States Supreme Court can overrule its own holdings. Cf. Brown v. Allen, 344 U.S. 443, 540 (1952) (Jackson, J., concurring in result) ("We are not final because we are infallible, but we are infallible only because we are final."). The Plaintiffs intend to appeal this Adversary Proceeding to the United States Supreme Court and file a petition for certiorari in order to overturn Dewsnup, and by extension, Bank of America, N.A. v. Caulkett, 575 U.S. ____, 135 S.Ct. 1995 (2015).

4

Bankruptcy and the U.S. Supreme Court, p. 215 (2017). The principal author of the Solicitor General's brief in Dewsnup, Ronald Mann, has come to realize that this position adopted in Dewsnup is wrong. Id. at 216, n. 12. While this Court cannot undo the travesty that is Dewsnup, it is the hope of Plaintiffs that this Court will emphasize to the courts above how erroneous the reasoning in Dewsnup is and how much it complicates bankruptcy practice at this level.

      a.     **Dewsnup has been subject to near universal criticism**

Aside from the scathing dissent in Dewsnup, the Supreme Court itself has panned its decision in Dewsnup. See, Bank of America, N.A. v. Caulkett, 135 S.Ct 2000, n. †; see also, Bank of Am. Nat'l Trust, 526 U.S. 434, 462–63 (Thomas, J., concurring in the judgment). Additional criticism of Dewsnup has been leveled by the Circuit Courts, see. e.g., Woolsey v. Citibank, N.A. (In re Woolsey), 696 F.3d 1266, 1274 (10th Cir. 2012), bankruptcy courts, see, e.g., Cunningham v. Homecomings Fin. Network (In re Cunningham), 246 B.R. 241, 245–46 (Bankr.D.Md. 2000); Dever v. IRS (In re Dever), 164 B.R. 132, 138, (Bankr.C.D.Cal.1994); and academics, see, e.g., Lawrence Ponoroff & F. Stephen Knippenberg, The Immovable Object Versus the Irresistible Force: Rethinking the Relationship Between Secured Credit and Bankruptcy Policy, 95 Mich. L.Rev. 2234, 2304 (1997) ("The Supreme Court's holding in Dewsnup transgresses most of the traditional principals of statutory construction."); David Gray Carlson, Bifurcation of Undersecured Claims in Bankruptcy, 70 Am. Bankr.L.J. 1, 12-20 (1996); Barry E. Adler, Creditor Rights After Johnson and Dewsnup, 10 Bankr.Dev. J. 1, 10–12

5

(1993); Mary Josephine Newborn, <u>Undersecured Creditors in Bankruptcy: Dewsnup, Nobelman, and the Decline of Priority</u>, 25 Ariz. St. L.J. 547 (1993); Margaret Howard, <u>Dewsnupping the Bankruptcy Code</u>, 1 J. Bankr.L. & Prac. 513 (1992) ("the Court adopted reasoning that no bankruptcy court or scholar has ever advanced in the strip down context and concluded that 'allowed secured claim' does not carry its section 506(a) meaning throughout the Code.").

**b.      Circuit Courts have misinterpreted <u>Dewsnup</u> leading to a further evisceration of Section 506(d)**

The holding in <u>Dewsnup</u> was that if a claim was allowed, then any lien associated with that claim was also allowed and could not be voided under Section 506(d). Section 506(d)(1) additionally states, if a claim is disallowed under either Section 502(b)(5) or 502(e), then the lien supporting that claim also cannot be voided. Under <u>Dewsnup</u> and Section 506(d), this would mean that if a claim is disallowed for any other reason (than those under Sections 506(d)(1) and (d)(2)), then the lien supporting that disallowed claim would then be void. However, the erroneous dicta[2] set forth in <u>Dewsnup</u>, "liens pass through bankruptcy unaffected," <u>Dewsnup</u> at 417, has been relied upon by the Circuit Courts to expand the types of the liens that are not voided under Section 506(d), even though the underlying claim is disallowed.

---

[2] As pointed out by Judge Posner in <u>In re Penrod</u>, 50 F.3d 459 (7th Cir. 1995), liens do pass through bankruptcy unaffected "unless they are brought into the bankruptcy proceeding and dealt with there." <u>Id</u>. at 463.

6

Claims that are disallowed under Section 502(b)(9) (not timely filed), while not appearing in the exception to avoidance under Section 506(d)(1) or 506(d)(2), do not have their corresponding lien disallowed as a result of Dewsnup. According to the Fourth Circuit, In re Hamlett, 322 F.3d 342, 347 (4th Cir. 2003), and the Eight Circuit, Shelton v. CitiMortgage, Inc. (In re Shelton), 735 F.3d 747, 748-749 (8th Cir. 2013) the plain language of Section 506(d) allows for the avoidance of a lien on a claim disallowed under Section 502(b)(9). However, both courts ignored the holding of Dewsnup (if a claim is disallowed, then lien is then void under Section 506(d)), and the text of Section 506(d), and instead relied upon the dicta of Dewsnup, "liens pass through bankruptcy unaffected," and prevented lien avoidance.

This reliance upon dicta, and not the actual holding of Dewsnup, or the plain text of Section 506(d), is cause for concern and emphasizes the perniciousness of Dewsnup. "The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters[3]." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242, (1989) (citation and internal quotation marks omitted).

---

[3] The legislative history of Section 506(a) further emphasizes the error of the Dewsnup court by interpreting "allowed secured claim" to have one meaning in Section 506(a), and another meaning in Section 506(d). The House Report to the Bankruptcy Reform Act of 1978, with regards to Section 506(a) states,

"Subsection (a) of this section [506] separates an undersecured creditor's claim into two parts—he has a secured claim to the extent of the value of his collateral; he has an unsecured claim for the balance of his claim .... Throughout the bill, references to

No Circuit Court opinion has utilized Section 506(d) to void a lien since Dewsnup. This erroneous opinion must be overruled—otherwise, the holding in Dewsnup has written a statute of Congress out of existence.

**c.    The reasoning of Dewsnup threatens Chapter 7 liquidation analyses**

As pointed out by Professor Howard, "The only way to avoid wreaking havoc on these reorganization provisions is to assume that Dewsnup does not exist." Howard, Dewsnupping the Bankruptcy Code at 522. Unfortunately, Dewsnup does exist. With holding that an allowed claim now has an allowed secured claim in its full amount, certain bankruptcy courts have held in a hypothetical Chapter 7 liquidation that any lien—regardless of its secured status—is a fully secured lien; a position that is antithetical to Section 506(a). See, e.g., In re Talbert, 268 B.R. 811, 815 (Bankr. W.D. Mich. 2001), In re Ward, 129 B.R. 664, 670-671 (Bankr. W.D. Okla. 1991).

Dewsnup must be overturned to further prevent its incorrect dicta from infecting other portions of the Bankruptcy Code.

WHEREFORE, Plaintiff prays that the Court grant the following relief:

1.    That the Court deny the Defendant's Motion to Dismiss; and,

2.    For such other and further relief this Court deems just and proper.

---

secured claims are only to the claim determined to be secured under this subsection, and not to the full amount of the creditor's claim."

H.R. Rep. No. 595, 95th Cong., 2d Sess. 356, reprinted in 1978 U.S. Code Cong. & Admin. News 5963, 6312.

Respectfully submitted, this the 11th day of October, 2019.

RICHARD P. COOK, PLLC

/s/ Richard P. Cook
Richard P. Cook
Attorney for the Plaintiffs
N.C. State Bar No. 37614
7036 Wrightsville Ave, Suite 101
Wilmington, NC 28409
Telephone: (910) 399-3458
Email: Richard@CapeFearDebtRelief.com

## CERTIFICATE OF SERVICE

The undersigned certifies, under penalty of perjury, that he is over eighteen (18) years of age and that the:

**RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS COMPLAINT**

Was served upon the below named parties, and/or their counsel, by mailing postage prepaid, first class mail to the address(es) shown below, via email transmission, or via CM/ECF where indicated:

Via CM/ECF
Neil D. Jonas
Attorney for JPMorgan Chase Bank, N.A.


Dated:    October 11, 2019            RICHARD P. COOK, PLLC

/s/ Richard P. Cook
7036 Wrightsville Ave., Suite 101
Wilmington, NC 28403
(910) 399-3458

9